IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| EMPLOYEES COMMITTED FOR JUSTICE, GLADYS ALSTON, COURTNEY DAVIS, CYNTHIA GAYDEN, ROBERT GIBSON, JANNIE NESMITH, NORALEAN PRINGLE, CARRIE RICE, MARIA SCOTT, OLIN SINGLETARY and EDNA WILLIAMS, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>- vs -<br><br>EASTMAN KODAK COMPANY,<br><br>Defendant. | 6:04-CV-06098-CJS(F) |

## MEMORANDUM OF LAW OF DEFENDANT EASTMAN KODAK COMPANY IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL PRIVILEGED INFORMATION

Robert B. Calihan
Vincent E. Polsinelli
Erika J. Duthiers
NIXON PEABODY LLP
1100 Clinton Square
Rochester, New York 14604
(585) 263-1000

Judith E. Harris
Michael S. Burkhardt
Michael J. Puma
MORGAN LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, Pennsylvania 19103-2921
(215) 963-5000

Counsel for Defendant Eastman Kodak Company

## TABLE OF CONTENTS

Page

I. PRELIMINARY STATEMENT ..................................................................................1

II. RELEVANT PROCEDURAL AND FACTUAL HISTORY ......................................2

    A. Completely Unrelated Work Performed By Dr. Siskin In 2003 And 2004 Was Not Considered In Preparing His Expert Report ..........................................2

    B. The Legal Department's Review Process For Personnel Decisions, And The Results Of Statistical Analyses By The Legal Department Used To Provide Legal Advice ...........................................................................................5

III. ARGUMENT ...............................................................................................................7

    A. Plaintiffs Are Not Entitled To Discovery Of Privileged Work Performed By Dr. Siskin In 2003 And 2004 That He Never Reviewed Or Considered In Connection With His Expert Report In This Action ..........................................7

    B. Plaintiffs Are Not Entitled To Discovery Of The Results Of Privileged Analyses Conducted By Kodak's Legal Department, Which Kodak Did Not Rely Upon In Defending The Motion For Class Certification And Which Kodak's Expert Witnesses Did Not Review Or Rely Upon ..........................................10

IV. CONCLUSION ..........................................................................................................15

## TABLE OF AUTHORITIES

B.C.F. Oil Refining, Inc. v. Consolid. Edison Co. of New York, Inc.,
171 F.R.D. 57 (S.D.N.Y. 1997) ............................................................................................. 8

In re Bulow v. Bulow,
828 F.2d 94 (2d Cir. 1987) .................................................................................................. 13

Cornell Research Found., Inc. v. Hewlett Packard Co.,
No. 5:01CV1974NAM, 2003 WL 1524492 (N.D.N.Y. Feb. 7, 2003) ................................. 7

Detwiler Trust v. Offenbecher,
124 F.R.D. 545 (S.D.N.Y. 1989) .......................................................................................... 8

In re Dow Corning Corp.,
261 F.3d 280 (2d Cir. 2001) ................................................................................................ 10

Emcore Corp. v. Optium Corp.,
No. 06-1202, 2007 U.S. Dist. LEXIS 91009 (W.D. Pa. Dec. 11, 2007) .............................. 9

In re Grand Jury Proceedings of John Doe Co. v. United States,
350 F.3d 299 (2d Cir. 2003) ................................................................................................ 13

Hearn v. Rhay,
68 F.R.D. 574 (E.D. Wash. 1975) ....................................................................................... 14

Miteva v. Third Point Mngmt. Co.,
218 F.R.D. 397 (S.D.N.Y. 2003) ......................................................................................... 11

Pritchard v. County of Erie,
04-CV-00534C, 2007 U.S. Dist. LEXIS 80740 (W.D.N.Y. Oct. 31, 2007) ....................... 14

Sanofi-Sythelabo v. Apotex, Inc.,
363 F. Supp. 2d 592 (S.D.N.Y. 2005) ................................................................................. 11

Schwab v. Philip Morris USA, Inc.,
No. 04-CV-1945, 2006 WL 721368 (E.D.N.Y. Mar. 20, 2006) ........................................... 8

Sicurelli v. Jeneric/Pentron Inc.,
No. 03-CV-4934 (SLT)(KAM), 2006 WL 1329709 (E.D.N.Y. May 16, 2006) .................. 7

Stoner v. New York City Ballet Co.,
No. 99 Civ. 0196 BSJMHD, 2003 WL 749893 (S.D.N.Y. Mar. 5, 2003) .......................... 11

U.S. Fidelity & Guar. Co. v. Braspetro Oil Servs. Co.,
97 Civ. 6124 (JGK)(THK) and 98 Civ. 3099 (JGK)(THK),
2002 U.S. Dist. LEXIS 111 (S.D.N.Y. Jan. 4, 2002) ........................................................... 8

United States v. Bilzerian,
  926 F.2d 1285 (2d Cir. 1991) ........................................................................................... 14

**RULES**

Fed. R. Civ. P. 26(a)(2)(B)(ii) ................................................................................................ 7

I.  **PRELIMINARY STATEMENT**

Nearly a year after the close of discovery, Plaintiffs' Motion to Compel (the "Motion") challenges Kodak's assertion of the attorney/client privilege in 2006 and early 2007 as to (1) work performed for Kodak by Bernard Siskin, Ph.D., in 2003 and 2004 that is entirely unrelated to his expert report in this case and that was not reviewed or considered in connection with that report; and (2) the results of statistical analyses by Kodak's Legal Department for purposes of providing legal advice relating to personnel decisions by managers in Kodak's business units which, unlike non-privileged information regarding the nature and existence of the review process for personnel decisions, were never put at issue in this action. By the standards articulated in the Federal Rules and the caselaw cited by Plaintiffs, the Motion must fail.

Dr. Siskin's expert report addresses a tiny subset of personnel data that was examined by the EEOC in the early 2000s and used to reach conclusions in its 2004 Determination letters. Dr. Siskin's report concludes that the EEOC data (1) includes only employees in some jobs and a few departments and does not support the conclusions reached by the EEOC in its Determination letters. In fact, even in the limited dataset, there are not disparities adverse to African-Americans during the relevant time period in those limited jobs and departments. Plaintiffs may discover only what Dr. Siskin "considered" in formulating the opinions in his report. Page two of Dr. Siskin's report (filed under seal with Kodak's certification opposition papers) and his sworn declaration (submitted herewith as Exhibit B), confirm that <u>Dr. Siskin did not consider any of his unrelated privileged work from 2003 and 2004 in preparing his report</u>. He had no reason to do so since it pertained to a different dataset than the EEOC data. Thus, the 2003 and 2004 analyses are not discoverable. The cases cited by Plaintiffs do not alter this conclusion as they all involved circumstances where (1) an expert admitted to considering the information sought or (2) there was some ambiguity as to whether an expert considered such information.

Plaintiffs' challenge to the assertion of privilege as to the results of statistical analyses conducted by Kodak's Legal Department, premised on an "at issue waiver," is equally flawed. First, Kodak has not waived any privilege as to such analyses. Rather, it provided to Plaintiffs non-privileged documents and testimony concerning the nature and existence of a review <u>process</u> for personnel decisions, while asserting the privilege only as to the <u>results</u> of the analyses used to provide legal advice. Second, the <u>results</u> of such analyses have never been put "at issue" as Plaintiffs suggest. Kodak's class certification opposition papers do not rely on the results, and none of Kodak's expert witnesses relied upon or even received such results. Rather, Kodak's brief and its experts address only the <u>existence and nature of a review process</u> for personnel decisions. For these reasons, there has been no "at issue waiver" and Plaintiffs' caselaw – which generally pertains to circumstances where a privilege-proponent selectively waived privileged communications to show a good faith belief that it acted lawfully – is inapposite.

## II. RELEVANT PROCEDURAL AND FACTUAL HISTORY

### A. Completely Unrelated Work Performed By Dr. Siskin In 2003 And 2004 Was Not Considered In Preparing His Expert Report.

Bernard Siskin, Ph.D, is a renowned statistician who has trained the EEOC's personnel on statistical analyses. Siskin Dep. 17, 40-42.[1] On December 13, 2006, Dr. Siskin testified at length as a fact witness in this action based on work that he performed for Kodak in 1999. Specifically, Dr. Siskin testified that Kodak retained him to analyze its personnel data to identify any patterns of disparities in compensation or promotions adverse to African-Americans and other protected groups. Siskin Dep. 86-87, 110-114, 157, 160-61. Dr. Siskin concluded in 1999

---

[1] A true and correct copy of the relevant portions of the Transcript of the Deposition of Bernard Siskin, Ph.D., dated December 13, 2006 ("Siskin Dep.") is submitted herewith as Exhibit A.

that although there were some job groups in some departments that showed disparities, there was no evidence of statistically significant disparities common to job groups and business units across Kodak. Siskin Dep. 193-95, 312-16. Nevertheless, Kodak executives directed Dr. Siskin to design a particularly employee-friendly model that would identify any differences and to err on the side of the employees in that analysis. Siskin Dep. 110-13, 157, 160-61, 215, 231-32. Based on that model, and as described in Kodak's opposition to certification, the company implemented voluntary pay adjustments and lump sum payments in some departments for some African-American and other employees working in some job groups. Siskin 221-22, 226-29.

Dr. Siskin's deposition as a fact witness focused almost entirely on the work in 1999 described above. In the course of his deposition, however, Plaintiffs' counsel also asked Dr. Siskin about separate and distinct work that he performed for Kodak in 2003 and 2004. At that time, Kodak asserted the attorney/client privilege and thereafter produced an appropriate privilege log. During the deposition, Kodak's counsel asserted only the attorney/client privilege, not attorney work product protection, because Dr. Siskin's work in 2003 and 2004 was not related to any specific litigation or threatened litigation.[2] Siskin Dep. 93-98. Plaintiffs had ample opportunity thereafter to challenge Kodak's assertion of privilege, but they did not.

Plaintiffs also showed Dr. Siskin during his deposition a Determination letter from the EEOC that was unrelated to Dr. Siskin's work in 1999 (or in 2003 and 2004, for that matter) and that Dr. Siskin had never seen before. Siskin Dep. 311-12. Dr. Siskin had never reviewed the

---

[2]    Plaintiffs cite a few lines of Dr. Siskin's testimony to suggest that his work in 2003 and 2004 related to this litigation. Pls' Mem. at 3 n.3. However, Plaintiffs ignore the fact that just a few pages later in the transcript, Dr. Siskin acknowledged his confusion and repeatedly confirmed that he has no idea whether his work related to any litigation. Siskin Dep. 99-101.

data examined by the EEOC that formed the basis for the EEOC's conclusions and, therefore, Dr. Siskin could not fully opine about the EEOC's conclusions. Siskin Dep. 312-16. Dr. Siskin did confirm, however, that his own conclusions in 1999 were inconsistent with the EEOC's observation of disparities adverse to African-Americans across Kodak, and Plaintiffs had every opportunity to explore that assessment. Siskin Dep. 312-16.

Because Plaintiffs had questioned Dr. Siskin about the EEOC's determination letter despite the fact that Dr. Siskin had never reviewed the data examined by the EEOC, Kodak then retained Dr. Siskin for the first time as a testifying expert to analyze the EEOC data. Siskin Decl. (Exhibit B) ¶ 2. In January 2008, Kodak produced to Dr. Siskin for the first time the same data that the EEOC had examined years earlier. Siskin Decl. (Exhibit B) ¶ 3.[3]

As detailed in his report, Dr. Siskin analyzed this data and concluded that it (1) was a very limited set of data for only some job groups in a few departments and (2) did not support the EEOC's conclusions in any way. Siskin Decl. (Exhibit B) ¶ 4. The data included only a small subset of Kodak's employees working in certain jobs in certain business units – in total, less than 10% of the Kodak population. Siskin Decl. (Exhibit B) ¶ 4. Moreover, Dr. Siskin's report confirms that his analysis of this limited EEOC data showed no disparities adverse to African-Americans in compensation and promotions during the time period relevant to this action and, instead, found evidence of disparities <u>favoring</u> African-Americans.

Plaintiffs now seek discovery of Dr. Siskin's unrelated work for Kodak as a consultant in 2003 and 2004, before this action and years before he was retained as a testifying expert, relating to an entirely different data set and with no bearing on analyses of the EEOC data in his report.

---

[3]   The EEOC data was produced early in this case and Plaintiffs have had every opportunity to examine it.

### B. The Legal Department's Review Process For Personnel Decisions, And The Results Of Statistical Analyses By The Legal Department Used To Provide Legal Advice.

Plaintiffs and their experts assert in this action that Kodak failed to implement adequate accountability and oversight measures for personnel decisions. As detailed in Kodak's certification opposition and its experts' reports, however, Plaintiffs and their experts fail to acknowledge many oversight mechanisms at Kodak, including second-level supervisor reviews, supervisor training, written guidelines, human resources oversight, and the Legal Department's review process, that constrain discretion in personnel decisions. As to just one of those mechanisms, the Legal Department's review process for personnel decisions, Kodak produced documents and testimony regarding the existence and nature of that process. Kodak did not, however, produce the privileged <u>results</u> of statistical analyses by the Legal Department, which results the Legal Department used to provide legal advice to Kodak's business units. Accordingly, Kodak's experts never received or considered any of those results, and Kodak did not rely upon the results in any of its certification opposition papers.

Plaintiffs first sought information regarding the Legal Department's review process during the deposition of William Bonnell over a year ago on February 21, 2007. At that time, Kodak's counsel allowed Mr. Bonnell to testify about the review <u>process</u> for annual performance evaluation and compensation decisions and confirmed that the company had produced documents describing the <u>process</u> for such analyses. Bonnell Dep. 150-54.[4] Kodak also objected, however, on the basis of the attorney/client privilege to the extent that Plaintiffs sought information regarding the <u>results</u> of the Legal Department's statistical analyses, which were

---

[4] A true and correct copy of the relevant portions of the Transcript of the Deposition of William Bonnell dated February 21, 2007 ("Bonnell Dep.") is submitted herewith as Exhibit C.

created for purposes of providing legal advice. Bonnell Dep. 157-58. Plaintiffs did not question Mr. Bonnell further on the review process or the process-related documents that were produced.

The same issue came up a month later on March 28, 2007, during Robert Berman's deposition. Kodak again confirmed that it had produced process-related documents and permitted Mr. Berman to testify about such process, but it objected on the basis of the attorney/client privilege to disclosure of the results of the Legal Department's statistical analyses performed for purposes of providing legal advice. Berman Dep. 112-18.[5] As Mr. Berman explained in his declaration submitted in support of Kodak's opposition to class certification, Berman Declaration ¶¶ 4, 33-42, Plaintiffs could have questioned him further during any of the three days of his deposition about the process, but they did not. Moreover, Plaintiffs did not pursue the depositions of other witnesses regarding non-privileged information pertaining to the Legal Department's review process.

Until now, Plaintiffs had never objected to Kodak's assertion of privilege during the Bonnell and Berman depositions or filed any discovery motion on this issue. Plaintiffs now seek to re-open discovery nearly a year after it closed so that they can re-depose witnesses (see Pls' Mem. at 8 n.6) to obtain not only more non-privileged information as to the Legal Department's review process but also the privileged results of statistical analyses (which are not the subject of Kodak's certification opposition papers and which were never provided to Kodak's experts).

---

[5] A true and correct copy of the relevant portions of the Transcript of the Deposition of Robert Berman dated March 28, 2007 ("Berman Dep."), one of three days of testimony by Mr. Berman, is submitted herewith as Exhibit D.

### III. ARGUMENT

#### A. Plaintiffs Are Not Entitled To Discovery Of Privileged Work Performed By Dr. Siskin In 2003 And 2004 That He Never Reviewed Or Considered In Connection With His Expert Report In This Action.

Plaintiffs incorrectly contend that simply by submitting an expert report from Dr. Siskin pertaining to the narrow subject of a limited subset of personnel data examined by the EEOC, see supra at 2-4, Kodak has somehow waived the attorney/client privilege as to the unrelated work performed by Dr. Siskin several years ago. Dr. Siskin's report regarding the EEOC data has nothing to do with his unrelated and privileged work in 2003 and 2004 concerning an entirely different dataset. See supra at 2-4. Thus, Dr. Siskin did not consider his work from 2003 and 2004 and did not have any reason to do so. See supra at 2-4.

Kodak does not dispute that Dr. Siskin is required to disclose all "data or other information considered by [him] in forming" the opinions expressed in his report. Fed. R. Civ. P. 26(a)(2)(B)(ii) (emphasis added). Accordingly, Dr. Siskin disclosed on page 2 of his report the data and information considered in forming the opinions in his report, and Kodak has produced all such data and analyses in response to Plaintiffs' subpoena related to Dr. Siskin's work as a testifying expert.

In formulating his opinions as a testifying expert regarding the limited data examined by the EEOC, however, Dr. Siskin did not review or consider any of his unrelated work (pertaining to different personnel data) that he performed for Kodak years earlier. See Exhibit B (Siskin Decl.) ¶¶ 5-6. Thus, such analyses from 2003 and 2004 are not discoverable. Fed. R. Civ. P. 26(a)(2)(B)(ii); Sicurelli v. Jeneric/Pentron Inc., No. 03-CV-4934 (SLT)(KAM), 2006 WL 1329709 (E.D.N.Y. May 16, 2006) (denying motion to compel discovery of documents based on sworn affidavit by expert that he had not considered such documents in preparing his expert report); Cornell Research Found., Inc. v. Hewlett Packard Co., No. 5:01CV1974NAM, 2003 WL

1524492, at *1 (N.D.N.Y. Feb. 7, 2003) (denying motion to compel discovery of materials that an expert previously reviewed but did not consider as a testifying expert); Detwiler Trust v. Offenbecher, 124 F.R.D. 545, 546 (S.D.N.Y. 1989) (denying motion to compel discovery of materials relating to expert's separate work as a consultant because the expert did not consider such materials in the role as a testifying expert).

The cases cited by Plaintiffs either support Kodak or fail to advance Plaintiffs' position. Kodak previously articulated for Plaintiffs why their reliance on Schwab v. Philip Morris USA, Inc., No. 04-CV-1945, 2006 WL 721368 (E.D.N.Y. Mar. 20, 2006), is misplaced. Pls' Mem., Exh. D. That opinion does not even discuss the attorney/client privilege. Moreover, the expert in Schwab specifically admitted to considering a survey when forming the opinions in his report. Thus, the court ordered the production of the survey. In contrast, Dr. Siskin never considered his 2003 and 2004 analyses in forming the opinions in his report regarding the data examined by the EEOC, nor would there have been any reason to do so. See Exhibit B (Siskin Decl.) ¶¶ 5-6.

B.C.F. Oil Refining, Inc. v. Consolid. Edison Co. of New York, Inc., 171 F.R.D. 57 (S.D.N.Y. 1997), is equally unhelpful. That decision denied in part a motion to compel discovery of documents relating to an expert's role as a consultant and granted the motion only to documents for which there was an ambiguity as to the expert's consideration of the documents in serving as a testifying expert. Here, Dr. Siskin's undisputed declaration submitted herewith as Exhibit B makes clear that there is no ambiguity.

U.S. Fidelity & Guar. Co. v. Braspetro Oil Servs. Co., 97 Civ. 6124 (JGK)(THK) and 98 Civ. 3099 (JGK)(THK), 2002 U.S. Dist. LEXIS 111, at *27-29 (S.D.N.Y. Jan. 4, 2002), examined only the attorney work product doctrine (which is not at issue here) rather than the attorney/client privilege. In any event, the court granted a motion to compel because the

defendant failed to offer evidence that its expert did not consider the documents at issue. In contrast, Dr. Siskin's declaration (Exhibit B) plainly demonstrates that he did not review or consider his work from 2003 and 2004 in formulating the opinions in his report.[6]

Finally, ignoring the limited scope of Rule 26(a)(2) disclosures, Plaintiffs appear to suggest that prior, unrelated work performed by Dr. Siskin should be discoverable even if he did not consider it in preparing his report. Specifically, Plaintiffs claim that such prior work could bear on the "reliability" and "appropriateness" of the unrelated analyses in Dr. Siskin's report.[7] Plaintiffs cite nothing in Rule 26 to support this expansive approach to expert discovery. Nor do they cite a single case to support this position. Remarkably, Plaintiffs took the exact opposite position in their objections to subpoenas served on Plaintiffs' experts (the relevant portions of

---

[6] Similarly, Emcore Corp. v. Optium Corp., No. 06-1202, 2007 U.S. Dist. LEXIS 91009, at *2 (W.D. Pa. Dec. 11, 2007), assessed the attorney work product doctrine rather than the attorney/client privilege. Moreover, there was an ambiguity in Emcore as to when the testifying expert became a testifying expert and, therefore, there was an ambiguity as to whether the expert reviewed the documents at issue in connection with his role as a testifying expert. Again, Dr. Siskin's report and declaration (Exhibit B) eliminate any alleged ambiguity here.

[7] Plaintiffs' preferred approach to expert discovery suggests that every prior analysis conducted by an expert in any case should be discoverable so that a party can challenge any inconsistencies among the methodology employed for the analyses over the years. Even if that were the law, which it is not, Plaintiffs' own experts never provided such discovery based on Plaintiffs' objections and, therefore, Plaintiffs cannot contend that Kodak's experts should do so.

which are submitted herewith as Exhibit E). In that regard, Plaintiffs stated that materials not "considered" by their experts in connection with their reports were not discoverable.

### B. Plaintiffs Are Not Entitled To Discovery Of The Results Of Privileged Analyses Conducted By Kodak's Legal Department, Which Kodak Did Not Rely Upon In Defending The Motion For Class Certification And Which Kodak's Expert Witnesses Did Not Review Or Rely Upon.

"[C]ompelled disclosure of privileged attorney-client communications, absent waiver or an applicable exception, is contrary to well-established precedent." In re Dow Corning Corp., 261 F.3d 280, 284-85 (2d Cir. 2001) (based on attorney/client privilege, holding that the district court erred by ordering deposition of corporation's general counsel absent a finding that the corporation had waived the privilege or that an exception applied).

Despite the "sanctity" of the attorney/client privilege recognized by the Second Circuit, see id., Plaintiffs demand the production of privileged analyses by Kodak's Legal Department created to provide legal advice because Plaintiffs claim that Kodak has "selectively disclos[ed] the Legal Dept.'s findings regarding the extent to which bias impacted those [personnel] decisions." Pls' Mem. at 1. Plaintiffs cite no record evidence to support this assertion because there is none. Nowhere in Kodak's class certification opposition papers or its experts' reports is there a disclosure of the "findings" of any privileged statistical analysis.

Applying Plaintiffs' own standard for "at issue waiver" of the attorney/client privilege, Pls' Mem. at 8, the results of statistical analyses by Kodak's Legal Department are not discoverable for at least two reasons. First, the privileged results of the Legal Department's statistical analyses are only discoverable, according to Plaintiffs, if Kodak has put those results "at issue." Pls' Mem. at 8. Here, however, the results were never put at issue. Rather, Kodak and its experts have addressed only the existence and nature of a review process by the Legal Department. That is a far cry from relying on the <u>results</u> of statistical analyses to support

Kodak's position, which it has never done. Thus, the results are not discoverable. See, e.g., Sanofi-Sythelabo v. Apotex, Inc., 363 F. Supp. 2d 592, 594 (S.D.N.Y. 2005) (holding that the privilege-holder did not waive the attorney/client privilege because the privilege-holder did not assert any defense based on the privileged information); Miteva v. Third Point Mgmt. Co., 218 F.R.D. 397, 398 (S.D.N.Y. 2003) (same); Stoner v. New York City Ballet Co., No. 99 Civ. 0196 BSJMHD, 2003 WL 749893, at *1-2 (S.D.N.Y. Mar. 5, 2003) (holding that "at issue waiver" did not apply because the privilege-holder had not "put into issue the substance of any attorney's advice, and disclosure of that advice is not necessary to respond to its articulated defenses.").

Plaintiffs do not identify any statements in Kodak's opposition papers that rely on the results of the Legal Department's statistical analyses such that the results would be "at issue" in this action.[8] Rather, in rebutting the claim by Plaintiffs and their experts that Kodak lacked accountability and oversight mechanisms for personnel decisions, Kodak's opposition papers and its expert reports addressed (among other accountability measures such as second-level supervisor reviews, supervisor training, and human resources oversight) only the existence and nature of the process for the Legal Department's oversight of personnel decisions – not the

---

[8] Among the hundreds of pages of Kodak's opposition papers and expert reports, Plaintiffs identify a single snippet of testimony by Mr. Berman as evidence that Kodak "relied upon" the results of the Legal Department's analyses in defending the motion for class certification. Pls' Mem. at 11. What Plaintiffs' cite, however, is just a clause in a lengthy block quote by Mr. Berman regarding the Legal Department's review process in which he makes only a passing reference to the results of statistical analyses. Nowhere in Kodak's pleadings or its experts' reports, however, does Kodak rely on that statement or any other aspect of the results of the Legal Department's statistical analyses to support its position.

results of any statistical analyses. Plaintiffs had ample opportunity to explore that process in discovery. See supra at 5-6. Thus, they may not now re-open discovery for yet another bite at the apple. Pls' Mem. at 8 n.6 (demanding the opportunity to re-depose fact witnesses).

Nevertheless, in an apparent effort to demonstrate that Kodak and its experts relied on the results of the Legal Department's statistical analyses, Plaintiffs inexplicably cite to portions of the reports of Drs. Lundquist and Tetlock regarding the existence of a review process for personnel decisions. Pls' Mem. at 12. Again, Plaintiffs are mixing apples with oranges. Plaintiffs do not identify anywhere in the reports of Drs. Lundquist and Tetlock any mention of the results of any analyses by the Legal Department. That is because these experts never received the results of any analyses by the Legal Department, as is clear from the Rule 26(a)(2) disclosures in their reports (submitted herewith as Exhibits F and G, respectively) and which Plaintiffs may confirm during the depositions of Kodak's experts. Instead, Kodak's experts and Plaintiffs had access to the same documents and testimony (both deposition testimony and the declaration testimony by Mr. Berman that Plaintiffs could have elicited during his deposition) as to the existence and nature of the Legal Department's review process as an important accountability measure.

Plaintiffs' demand for disclosure of privilege information fails a second and independent prong of their own test for "at issue waiver" – specifically, application of the privilege to the results of the Legal Department's analyses has not deprived Plaintiffs of access to information vital to their claims. Pls' Mem. at 8. In that regard, the personnel data considered over the years by the Legal Department in conducting its statistical analyses is the same data produced to Plaintiffs in this litigation. Thus, Plaintiffs and their experts have had access for two years to the same data and could have conducted any analyses that they wished. Plaintiffs do no explain,

because they cannot, what possible need they have for the results of the Legal Department's analyses when they have performed their own analyses presented in the reports of Plaintiffs' experts. Moreover, as Kodak has produced documents, testimony, and the Declaration of Robert Berman describing the process for the Legal Department's analyses, see supra at 5-6, Plaintiffs could have used the comprehensive personnel data produced to them to replicate those analyses if they wished to do so. The motivation that appears to be driving Plaintiffs' demands, then, is that they do not want to do that work. That is no basis, however, for a waiver of privilege.

As would be expected considering that the circumstances here fail to satisfy two prongs of Plaintiffs' own test for "at issue waiver," the caselaw cited by Plaintiffs is inapposite. *In re Bulow v. Bulow*, 828 F.2d 94 (2d Cir. 1987), has no possible bearing on the dispute now before the Court. In Bulow, the Second Circuit found a waiver of the attorney/client privilege because the privilege-proponent publicly published the privileged information in a book and then promoted the book along with his counsel on television and radio. See id. at 100-01. There certainly is no evidence of such an intentional waiver by Kodak.

Other caselaw cited by Plaintiffs firmly supports Kodak. In *In re Grand Jury Proceedings of John Doe Co. v. United States*, 350 F.3d 299, 302-03 (2d Cir. 2003), even applying a "highly deferential standard of review," the Second Circuit concluded that the defendant did not waive attorney-client privilege.[9]

---

[9] In an effort to resolve this dispute and avoid the Court's involvement, Kodak brought this issue to Plaintiffs' attention as well as many other deficiencies in their demands for privileged information. See Pls' Mem., Exh. D. Rather than respond or reconsider their arguments, Plaintiffs filed the Motion and regurgitated many of the same cases that Kodak had already shown to be distinguishable or contrary to Plaintiff's position.

In general, Plaintiffs' remaining cases involved circumstances where the privilege-proponent raised an affirmative defense that required <u>selective</u> <u>disclosure</u> of advice from counsel – a claim, for instance, that a defendant had a good faith belief that engaging in some financial transaction, which turned out to be illegal, was legal based on the advice of counsel. <u>See, e.g.</u>, <u>United States v. Bilzerian</u>, 926 F.2d 1285, 1291-1294 (2d Cir. 1991) (concluding that the defendant would have waived the attorney-client privilege by testifying that he lacked intent to violate securities laws, relevant to *mens rea* component of criminal charge, because he had a good faith belief that his actions were legal based on communications with his attorney); <u>Hearn v. Rhay</u>, 68 F.R.D. 574, 580-81 (E.D. Wash. 1975) (concluding that defendants waived the attorney-client privilege by raising a defense premised on alleged good faith reliance on the legality of their conduct, which placed at issue communications with counsel); <u>Pritchard v. County of Erie</u>, 04-CV-00534C, 2007 U.S. Dist. LEXIS 80740, at *10 (W.D.N.Y. Oct. 31, 2007) (applying <u>Hearn</u> to similar facts). Thus, in those cases, fairness required allowing the opposing party access to closely-related privileged materials to rebut that defense.

Here, in contrast, there has been no selective waiver of privilege because Kodak has not relied on any privileged materials to support its defense of the motion for class certification. Rather, as set forth above, Kodak's certification opposition papers and its experts' reports address non-privileged information available to Plaintiffs pertaining to the <u>process</u> for the Legal Department's oversight of personnel decisions. Specifically, Kodak's pleadings and experts evaluate the numerous accountability and oversight mechanisms, including, without limitation, second-level supervisor reviews, supervisor training, written guidelines, human resources oversight, and the Legal Department's review process, that constrain discretion in personnel decisions at Kodak. In light of those measures, which Plaintiffs' experts ignored, Kodak's brief

and its experts observe that the blanket and overbroad conclusions by Plaintiffs' experts regarding the impact of alleged subjectivity at Kodak are deeply flawed. Kodak and its experts do not, however, rely upon or discuss the <u>results</u> of the Legal Department's statistical analyses and, therefore, an "at issue waiver" is inapplicable to those results.

## IV.  CONCLUSION

Based on the foregoing, Kodak respectfully submits that (1) oral argument is unnecessary with respect to the straightforward privilege issues presented by the Motion, (2) the Motion should be denied; and (3) Kodak should be awarded its attorneys' fees and costs incurred in defending an untimely and frivolous discovery motion plainly calculated only to further delay resolution of the pending motion for class certification.

Dated: April 11, 2008
      Rochester, New York

Robert B. Calihan
Vincent E. Polsinelli
Erika J. Duthiers
NIXON PEABODY LLP
1100 Clinton Square
Rochester, New York 14604

MORGAN LEWIS & BOCKIUS LLP

By: _____
Judith E. Harris
Michael S. Burkhardt
Michael J. Puma
1701 Market Street
Philadelphia, Pennsylvania 19103-2921