UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

EMPLOYEES COMMITTED FOR JUSTICE,
COURTNEY DAVIS, GLADYS ALSTON,
CYNTHIA GAYDEN, ROBERT GIBSON,
JANNIE NESMITH, NORALEAN PRINGLE,
CARRIE RICE, MARIA SCOTT, OLIN
SINGLETARY, and EDNA WILLIAMS,
on behalf of themselves and all
others similarly situated,

                              Plaintiffs,        DECISION AND ORDER
                                                 04-CV-6098
        v.

EASTMAN KODAK COMPANY,

                              Defendant.
_____

### Preliminary Statement

Before the Court is plaintiffs' motion to compel (Docket #288) which seeks resolution of two privilege issues.  Both issues stem from arguments made by Kodak in opposition to plaintiffs' pending motion for class certification.  The matter has been fully briefed and extensive oral argument was heard by this Court on Friday, May 9, 2008.  For the reasons that follow, plaintiffs' motion to compel is **denied in part and granted in part**.  Each issue is addressed separately below.

### I.  The Siskin Statistical Analyses

Relevant Facts: In 1999, statistician Dr. Bernard Siskin was retained by Kodak to analyze Kodak personnel data in an effort to determine whether there was statistical evidence of disparities in

compensation or promotions among protected groups employed by Kodak. The results of Siskin's 1999 study was favorable to Kodak. Thereafter, Kodak identified Siskin as a fact witness in this litigation with respect to his 1999 study. Siskin was deposed by plaintiffs on December 13, 2006.

During Siskin's deposition plaintiffs' counsel questioned him about statistical studies he performed for Kodak in 2003 and 2004. These studies also concerned potential pay and promotion disparities among Kodak employees, including African American employees. Siskin testified that the statistical analyses he conducted in 2003 and 2004 were the result of specific requests from Kodak's in-house Legal Department as well as outside litigation counsel retained by Kodak. <u>See</u> Siskin Deposition Transcript, annexed as Exhibit "A" to Docket #288, at p. 87-90. Kodak's counsel asserted the attorney-client privilege as to the 2003-2004 analyses and instructed Siskin not to answer any questions about these pay and promotion studies. <u>Id</u>. at p. 83-87, 90-91. Defense counsel promised to provide a privilege log detailing the Siskin analyses that were being withheld on the basis of attorney-client privilege. <u>Id</u>. at p. 84.

Later in his deposition Siskin was asked by plaintiffs' counsel to comment on conclusions reached by the EEOC with respect to pay and promotion disparities at Kodak. Plaintiffs' counsel read the adverse findings that were set forth in a 2004

Determination Letter sent by the EEOC to Kodak.   Although Siskin
testified he had never seen the Determination Letter before, he
found the conclusions reached by the EEOC inconsistent with the
conclusions he reached in conducting his 1999 statistical study for
Kodak.

During his deposition Siskin stated that he did not expect to
testify as an expert "in this case."  Id. at p. 81-82.   Kodak
apparently changed their strategy with respect to Siskin because in
January 2008 Siskin was retained by Kodak as a testifying expert.
According to Siskin, Kodak retained him only "for the limited
purpose of reviewing and analyzing the data examined by the EEOC"
in reaching the conclusions set forth in the EEOC's 2004
Determination Letter.  See Siskin Affidavit, annexed as Exhibit "B"
to Docket #290, at ¶¶ 3-4.  In an affidavit submitted by Siskin in
support of Kodak's opposition to this motion to compel, Siskin
avers that in conducting his 2008 study he did not review any work
he did for Kodak in 2003 and 2004 because those earlier analyses
"had nothing to do with the data examined by the EEOC" in reaching
the conclusions set forth in the 2004 Determination Letter.  Id. at
¶ 5.

In its papers opposing class certification, Kodak has offered
the expert opinion of Siskin.   In his expert report, Siskin
challenges the EEOC's findings that there was evidence of racial
disparities in pay and promotion at Kodak.   In the instant motion

to compel, plaintiffs claim that by relying on the expert opinion of Siskin in support of its opposition to the class certification motion, Kodak must now disclose the statistical analyses Siskin generated for Kodak in 2003 and 2004 as to racial disparities that may have existed in Kodak's workforce.  Plaintiffs argue that they have the "right to test fully both the factual bases of Dr. Siskin's opinions and his credibility, and to review all relevant materials."  See Plaintiffs' Memorandum of Law, annexed to Docket #288, at p. 4.

Decision: When an expert serves as a testifying witness, Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure requires disclosure of materials considered, reviewed or generated by the expert in forming the opinion, irrespective of whether the materials were actually relied on by the expert.  When an expert is retained as a litigation consultant, however, materials reviewed or generated by the expert are generally privileged and immune from disclosure.  The current dispute pays tribute to the problems that arise when an expert wears "two hats," serving as both a litigation consultant and a testifying witness.  In such circumstances courts are forced to grapple with what must be disclosed "when an expert alternately dons and doffs the 'privileged hat' of a litigation consultant and the 'non-privileged hat' of the testifying witness." S.E.C. v. Reyes, No. C 06-04435 CRB, 2007 WL 963422, at *1 (N.D. Cal. Mar. 30, 2007).

4

> In other words, does a litigant forfeit the privilege
> that would otherwise attach to a litigation consultant's
> work when he offers that expert as a testifying witness?
> Every court to address this "multiple hats" problem has
> concluded that an expert's proponent still may assert a
> privilege over such materials, but only over those
> materials generated or considered uniquely in the
> expert's role as consultant.

Id.   "[A]ny ambiguity as to the role played by the expert when reviewing or generating documents should be resolved in favor of the party seeking disclosure." B.C.F. Oil Ref., Inc. v. Consol. Edison Co. of N.Y., 171 F.R.D. 57, 62 (S.D.N.Y. 1997).   As one court recently explained in trying to decipher if an expert "considered" materials:

> [E]ven if the expert avers under oath that he did not
> actually consider certain materials in forming his
> opinion, that will not control. Rather, the courts have
> embraced an objective test that defines "considered" as
> anything received, reviewed, read, or authored by the
> expert, before or in connection with the forming of his
> opinion, if the subject matter relates to the facts or
> opinions expressed.

Euclid Chem. Co. v. Vector Corrosion Techs., Inc., No. 1:05 CV 80, 2007 WL 1560277, at *3-4 (N.D. Ohio May 29, 2007)(footnotes omitted)(emphasis added).

By adopting this objective approach, courts avoid the problem of having to probe the subjective mental processes of the expert in ascertaining whether the expert "considered" a particular document. This is not a case where Dr. Siskin can claim he had no knowledge of or never reviewed the materials sought by plaintiff.  As the author of the analyses he did for Kodak in 2003 and 2004, he is not

able to claim that he was unaware of either the nature or the results of his prior work for Kodak. Thus, there can be no dispute that he had "considered" his previous work as a Kodak consultant when, at Kodak's request, he switched hats and became a testifying expert. The issue then is whether his current expert opinion relates to the same subject matter as his consulting opinions.

As to this aspect of the analysis, I find that the discrete statistical task Siskin completed as an expert for Kodak in 2008 is not sufficiently related to the consultative analyses he conducted in 2003 and 2004 to require disclosure of the results of the earlier studies. It is true that for almost a decade Siskin has been asked by Kodak to analyze Kodak generated employment data in order to ascertain whether there existed disparities in pay and promotion opportunities among different segments of the Kodak workforce, including African Americans. His 2008 study, however, was not part of that body of work. As a litigation expert Siskin was asked to analyze the "limited dataset [of personnel data] examined by the EEOC" in order to challenge "the conclusions drawn by the EEOC with respect to that particular dataset." See Siskin Affidavit, annexed as Exhibit "B" to Docket #290, at ¶¶ 3, 6. Siskin's 2008 analysis was not drawn from or based on any previous study or analysis he had conducted, but rather was specifically limited to utilizing data already selected and studied by the EEOC in order to evaluate the scientific reliability of the EEOC's

conclusions.   In this particular factual context, the work Siskin did in 2008 does not relate to the facts or subject matter of the work he conducted for Kodak in 2003 and 2004.

While the results of his consultative work need not be disclosed, the methodologies he utilized in 2003 and 2004 are discoverable.   In his 2008 expert report, Siskin refers to his previous statistical work for Kodak, including the fact that Kodak asked him to develop "alternative statistical procedures to compare individuals and evaluate any potential historical differences that might lead to pay disparities."   See Siskin February 2008 Expert Report, annexed as Exhibit "C" to Docket #288, at ¶ 2.   According to Siskin:

> Kodak wanted to examine the data in a way most favorable to its employees to identify any potential current pay disparities among similarly situated individuals who started at the company at the same time.   I proposed and developed a cohort analysis to accomplish that goal and Kodak ultimately used a cohort analysis to determine and make pay adjustments for African Americans, Hispanics, and women.

Id.

Given Siskin's reference to the methodologies he developed to analyze Kodak employment data, plaintiffs must be allowed leeway to scrutinize his methods and whether they were used in his 2008 study.   Disclosure of such information is fully consistent with the scope of expert discovery contemplated under the Federal Rules of Civil Procedure.   As a matter of fairness, plaintiffs should be allowed to question Siskin about the  procedures he used in those

past studies in order to effectively respond to or challenge the methodology and conclusions Siskin offers in his 2008 expert report.   Examination into the methodologies utilized by an expert to form his opinions may bear on the expert's "credibility, the soundness of his techniques, and the weight to be given his conclusions."   Schwab v. Philip Morris USA, Inc., No. 04-CV-1945 (JBW), 2006 WL 721368, at *3 (E.D.N.Y. Mar. 20, 2006).   It also may be relevant to the court's decision whether to qualify an expert under Daubert.[1]   Thus, while Kodak need not disclose the results of the statistical analyses conducted by Siskin as a consultant, Siskin may be questioned as to the nature of his prior work, the populations he studied, the statistical procedures and methods he utilized to conduct his previous work and whether his previous methodology is consistent with the methods he used in his 2008 expert report.

For the foregoing reasons, plaintiffs' motion to compel Kodak to disclose the results of the statistical analyses Dr. Siskin completed as a consultant in 2003 and 2004 that were set forth in Kodak's post-deposition privilege log is **denied**.   However, plaintiffs may conduct a supplemental deposition of Dr. Siskin for the limited purpose of inquiring into the statistical methodologies and procedures used by Siskin as a consultant to Kodak.   The supplemental deposition of Siskin should be conducted pursuant to

---

[1] See generally Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579 (1993).

this Decision and Order and shall be no more than two hours.

## II.   The Legal Department's Analyses

Relevant Facts: In response to plaintiffs' motion for class certification, Kodak has argued that personnel decisions made with respect to performance, pay, and promotion were premised on objective criteria.   To buttress its argument, Kodak pointed to several safeguards within the process designed to make sure that subjective bias or prejudice were not allowed to infect pay and promotion decisions for any discrete employee population, including African American employees.   One important safeguard specifically relied on by Kodak in support of its objective decision-making process was the advice of its Legal Department in the employee performance appraisal process.   An affidavit submitted by Robert Berman, Kodak's Senior Vice-President and Chief Human Resource Officer, in opposition to plaintiffs' class certification motion summarized the Legal Department's role in the performance appraisal process used by its Human Resources Department:

> To the extent that statistical analyses of performance appraisals have identified one or more organizational units with statistical disparities adverse to African-Americans or other groups, a report is provided to the Legal Department.
>
> The Legal Department then analyzes the information to evaluate the cause of any disparities and confers with the Human Resources Director responsible for the organizational units at issue to guide follow-up discussions with supervisors in particular units, and reviews of relevant performance documents, to identify appropriate explanations for any outliers in the

statistical model causing the disparities, or any other causes for the disparities. As I described in my deposition, at times, that process has led to adjustments to certain performance appraisal ratings and additional training for supervisors. No performance appraisals are final at Kodak until this process is complete.

After the Legal Department, in conjunction with Human Resources, has completed all of its work in this regard and has either identified appropriate explanations for any outliers creating disparities in organizational units or has made appropriate adjustments to performance ratings, I have then given approval for Kodak to move on to the annual pay delivery process.

See Berman Affidavit, annexed as Exhibit "E" to Docket #288, at ¶¶ 38, 39, 40.  At his deposition Berman testified:

Clearly the analyses that get done through our Legal Department, I think are, from my understanding, quite sophisticated in terms of how they look at this and certainly give me the assurance I need to know that the process is being completed in a way that is consistent with our policy.

See Berman Deposition Transcript, annexed as Exhibit "B" to Docket #294, at p. 121 (emphasis supplied).

It is clear that in responding to plaintiffs' criticisms of its performance appraisal process, Kodak has highlighted the involvement of its Legal Department in its "personnel decision making processes" as one of the "substantial accountability measures that constrain subjectivity."  See Kodak's Statement of Facts in Opposition to Plaintiffs' Motion for Class Certification, annexed as Exhibit "G" to Docket #288; see also Lundquist February 2008 Expert Report, annexed as Exhibit "I" to Docket #288, at p. 23, 36; Tetlock February 2008 Expert Report, annexed as Exhibit "J" to Docket #288, at p. 87-88.  In the instant motion to compel, plaintiffs' claim

10

that by relying on the involvement of Kodak's Legal Department as support for its contention that its performance appraisal process constrained consideration of improper criteria, Kodak has forfeited any claim of attorney-client privilege and must disclose the documents for which the privilege has been asserted.

Decision: A privilege, even if properly asserted,[2] may be forfeited when a party "asserts a claim that in fairness requires examination of protected communications." United States v. Bilzerian, 926 F.2d 1285, 1292 (2d Cir. 1991). The loss of the privilege under these circumstances is often referred to as an "at issue" waiver and is grounded in fairness. "[I]n certain circumstances a party's assertion of factual claims can, out of considerations of fairness to the party's adversary, result in the

---

[2] Although plaintiffs do not challenge Kodak's assertion of the attorney-client privilege, based on the current record it is not clear to this Court that all the materials associated with the Legal Department's participation in the employee appraisal process are actually privileged. "Nothing is harder to disentangle in the modern business world than in-house counsel who gives legal advice but is also intimately involved with the business operations of the client." Edna Selan Epstein, The Attorney-Client Privilege and the Work-Product Doctrine, at 347 (5th ed. 2007). A corporation may not seal off disclosure of business related materials simply by having their lawyers participate in the decision-making process. See generally ABB Kent-Taylor, Inc. v. Stallings & Co., Inc., 172 F.R.D. 53 (W.D.N.Y. 1996). Thus, the fact that Kodak's Legal Department routinely participates in certain personnel decisions does not automatically render those decisions legal as opposed to business related. "When the ultimate corporate decision is based on both a business policy and a legal evaluation, the business aspects of the decision are not protected simply because legal considerations are also involved." Hardy v. New York News, Inc., 114 F.R.D. 633, 643-44, (S.D.N.Y. 1987)(affirmative action materials transmitted to lawyer who also served as director of employee relations were not privileged).

11

involuntary forfeiture of privileges for matters pertinent to the claims asserted." John Doe Co. v. U.S., 350 F.3d 299, 302 (2d Cir. 2003); see also Trudeau v. New York State Consumer Prot. Bd., 237 F.R.D. 325, 340 (N.D.N.Y. 2006)("Forfeiture of the privilege turns on the consideration of fairness, or, more correctly cast, unfairness to the adversary."). Thus, where "it would be unfair for a party asserting contentions to an adjudicating authority to then rely on its privileges to deprive its adversary of access to material that might disprove or undermine the party's contentions," courts have ruled that the privilege has been forfeited. John Doe Co., 350 F.3d at 302. Because of the variety of factual circumstances in which issues of fairness can arise, the Second Circuit has cautioned "against broad generalizations, stressing that whether fairness requires disclosure is best decided on a case by case basis, and depends primarily on the specific context in which the privilege is asserted." Id. (citation, quotations and ellipsis omitted).

In seeking to preserve the privilege here, Kodak tries to distinguish between putting the "existence" of the performance appraisal process at issue and putting the "results" of the performance appraisal process at issue. According to Kodak, its opposition papers and expert reports addressed "only the existence and nature of the process for the Legal Department's oversight of personnel decisions - not the results of any statistical analyses." See Kodak's Memorandum of Law (Docket #290) at p. 10-12.

In the particular factual context presented here, Kodak's argument is not persuasive. In opposing class certification, Kodak has argued to the court that "oversight of personnel decisions" by its Legal Department has constrained improper subjectivity in the decision-making process. Indeed, Kodak argues that where its Legal Department has identified racial disparities in organizational units, it has worked with the Human Resources Department to make "appropriate adjustments to performance ratings." Clearly then, the probative value of Kodak's argument as to constraining subjective personnel decisions lies not with the <u>existence</u> of the oversight process, but with the <u>effectiveness</u> of the oversight process. Put simply, plaintiffs are entitled to challenge Kodak's contention that the process <u>worked</u> in "constraining subjectivity."

To hold otherwise would be unfair, as it would restrict plaintiffs ability to defend against Kodak's contention that "extensive oversight and monitoring" in the personnel decision-making process "prevent[ed] alleged stereotyping and unconscious biases from intruding on personnel decisions." <u>See</u> Kodak's Statement of Facts in Opposition to Plaintiffs' Motion for Class Certification, annexed as Exhibit "G" to Docket #288, at p. 70. The Legal Department's involvement in the process is not proof of an objective process unless the oversight was unbiased and objective. Were known disparities treated consistently and similarly by the Legal Department? Did the process and the recommendations of the Legal Department change over time? Kodak's Legal Department is

13

substantial.  Were there differences in the analyses of the data or the ultimate recommendation depending on who was responsible for reviewing the data or what protected group was being evaluated?  Was the Legal Department's advice as to "appropriate adjustments" consistent?   In evaluating the argument Kodak makes in opposing class certification, the results of the oversight process are inextricably intertwined with the process itself.   Kodak may not advance the claim that its Legal Department's oversight of the personnel process is evidence that the process is objective while relying on its privilege to withhold material that plaintiffs might need to effectively contest or impeach that claim.

For the foregoing reasons, defendant shall produce to plaintiffs the materials and statistical analyses generated by Kodak's Legal Department as part of its review of personnel decisions that are listed on Kodak's privilege log.  Plaintiffs' supplemental request to re-open discovery to depose members of Kodak's Legal Department is denied as unnecessary.

## CONCLUSION

Plaintiffs' motion to compel is **denied in part and granted in part** as set forth in this Decision and Order. Kodak's motion for costs and attorneys' fees is **denied**.


**SO ORDERED.**

_____
JONATHAN W. FELDMAN
United States Magistrate Judge

Dated: May **15**, 2008
Rochester, New York